# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

ELIOSA HERNANDEZ TORAL      §
INDIVIDUALLY AND      §
AS NEXT FRIEND OF Y.L., A MINOR,      §
     §
     *Plaintiff,*      §
     §      Civil Action No. 4:24-cv-3
v.      §      Judge Mazzant
     §
RONALD LEE HAWK AND      §
XPO LOGISTICS FREIGHT, INC.,      §
     §
     *Defendants.*      §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Ronald Lee Hawk and XPO Logistics Freight Inc.'s Rule 12(b)(6) Partial Motion to Dismiss (Dkt. #25). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED in part and DENIED in part**.

## BACKGROUND

### I.    Factual Background

This is a personal injury case that stems from a motor vehicle collision. In the late hours of February 2, 2022, Minor Y.L. piloted a pickup truck southbound on 75 North Central Expressway (Dkt. #23 at p. 2; Dkt. #18 at p. 1). For some reason, Y.L.'s vehicle stopped and straddled the left-most two lanes of traffic (Dkt. #23 at p. 2; Dkt. #18 at p. 1). At the same time, Defendant Hawk ("Hawk"), a truck driver employed by XPO Logistics Freight Inc. ("XPO") (collectively, "Defendants"), was driving southbound in the left-most lanes of 75 North Central Expressway in a commercial tractor to which two trailers were attached. (Dkt. #23 at p. 2; Dkt. #18 at p. 1).

Hawk's travel was during his scope of employment by XPO (Dkt. #16 at p. 1). Hawk came upon Y.L.'s vehicle and collided with Y.L.'s pickup truck (Dkt. #23 at p. 2; Dkt. #16 at p. 2). Upon impact, Y.L.'s vehicle became lodged under one of Hawk's trailers (Dkt. #23 at p. 2). Y.L. was still in the vehicle at the time of the collision (Dkt. #23 at p. 2). Hawk's rig continued to drag Y.L.'s vehicle (still pinned beneath the trailer) for some distance before both vehicles ultimately came to a stop (Dkt. #23 at p. 2). As a result of the collision, Eliosa Hernandez Toral ("Plaintiff") alleges that Y.L. suffered severe injuries (Dkt. #23 at p. 2). Defendants allege that as a result of the collision, Hawk suffered injuries and XPO suffered property damage (Dkt. #16 at p. 2). For Y.L.'s injuries, Plaintiff, individually and as next friend of Y.L., a minor, filed this lawsuit against Hawk and XPO (Dkt. #23). Defendants filed a counterclaim seeking redress for the physical and financial injuries that they allegedly suffered due to the collision (Dkt. #16 at p. 2).

## II.    Procedural Background

On November 13, 2023, Plaintiff initiated this civil action against Hawk and XPO in Texas state court (Dkt. #3). Through it, Plaintiff seeks damages of over $1,000,000 (Dkt. #3 at p. 2). Plaintiff's Original Petition asserted various claims of negligence against Hawk individually and against XPO on a theory of respondeat superior (Dkt. #3 at pp. 3–4). On December 28, 2023, Defendants filed their Answer to Plaintiff's Original Petition (Dkt. #4). Shortly after, on January 3, 2024, Defendants removed the matter to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332 as the basis for removal (Dkt. #1). Plaintiff did not move to remand the matter. Because Defendants' removal was timely, and because there is complete diversity among the parties and the amount in controversy requirement is satisfied, the Court has jurisdiction to hear the claim. *See* 28 U.S.C. § 1332(a).

2

On February 7, 2024, Plaintiff filed her First Amended Complaint (Dkt. #7), and Defendants filed their First Amended Answer (Dkt. #10). The parties continued to the discovery phase. On August 12, 2024, Defendants filed a counterclaim against Plaintiff, asserting three claims: (1) a negligence claim against Y.L.; (2) a negligent entrustment claim against Plaintiff; and (3) a negligence per se claim against Plaintiff (Dkt. #16 at pp. 2–3). On October 2, 2024, Defendants filed their Motion for Summary Judgment (Dkt. #19). Two days later, Plaintiff filed her Second Amended Complaint—the live pleading—which asserts negligence and negligence per se claims against Hawk, as well as a respondeat superior, negligent supervision, and negligent training claims against XPO (Dkt. #23).

Then, on October 18, 2024, Defendants filed the instant Partial Motion to Dismiss pursuant to Rule 12(b)(6) (Dkt. #25). Subsequently, Plaintiff filed her Response to Defendants' Partial Motion to Dismiss on November 1, 2024 (Dkt. #30) and Defendants replied on November 6, 2024 (Dkt. #31). The Court now takes up Defendants' Partial Motion to Dismiss under Rule 12(b)(6) (Dkt. #25). Defendants' Partial Motion to Dismiss seeks to dismiss Plaintiff's negligence per se and negligent supervision causes of action (Dkt. #25 at p. 1). As explained below, the Court determines that the Motion should be granted as to the negligence per se claim but denied in part as to the direct negligence claim against XPO.

## LEGAL STANDARD

A party may seek dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b); *Albany Ins. Co. v. Almacenadora Somex*, 5 F.3d 907, 909 (5th Cir. 1993). The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled

to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12(b)(6) motion allows a party to move to dismiss an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

In deciding a motion under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court views those facts in the light most favorable to the plaintiff. *Id.* The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Then, the Court must determine whether the complaint states a facially plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court must identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to

4

raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The present dispute turns more on whether, under the law, Plaintiff may properly levy a negligence per se, negligent supervision, and negligent training cause of action against Defendants rather than the plausibility of Plaintiff's pleadings. Defendants seek to dismiss:

1. Plaintiff's negligence per se claim, which is predicated on 49 C.F.R. § 392.14, because it does not impose upon Hawk a duty of care separate from his ordinary, common-law duty of care; and

2. Plaintiff's negligent supervision and training claims because they are barred as duplicative of Plaintiff's respondeat superior claim.

(Dkt. #25 at pp. 1–2). As a threshold matter, the Court, sitting in diversity, must apply Texas law to the case at bar (Dkt. #8 at p. 1). *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 71–77 (1938). Thus, whether either claim should be dismissed as a matter of law turns on Texas law. The Court addresses each issue in turn.

## I.    Negligence per se

Turning first to the negligence per se claim, Defendants argue that it should be dismissed because it is "redundant of [Plaintiff's] ordinary negligence claim" (Dkt. #25 at p. 3). Relying on Texas law, Defendants claim that "[w]hen a statute or regulation reflects a standard of care equivalent to the reasonably prudent-person standard, a negligence per se claim" cannot lay (Dkt.

#25 at p. 3). Defendants note that both Texas courts and federal courts (sitting in diversity) alike have held that 49 C.F.R. § 392.14—the statute upon which Plaintiff's negligence per se theory rests—imposes a standard of ordinary care, rather than a specialized standard (Dkt. #25 at pp. 4–5). Accordingly, Defendants argue that the Court must dismiss Plaintiff's negligence per se claim.

For her part, Plaintiff submits that in determining whether a particular claim is redundant of a negligence claim, Texas courts "look to whether the statute or regulation . . . leaves actions up to the discretion of the driver" (Dkt. #30) (cleaned up). According to Plaintiff, Defendants' argument is erroneous because it ignores that 49 C.F.R. § 392.14 imposes a mandate upon drivers—that is, an affirmative duty to take particular action—simply because it includes the word "shall" (Dkt. #30 at p. 3). Also relying on Texas law, Plaintiff asserts that "where the legislature has declared [that] a particular act 'shall' be done, it fixes the standard of care" (Dkt. #30 at p. 4). Because the statute is not discretionary, Plaintiff argues that her negligence per se action is not impermissibly duplicative of her negligence cause of action (Dkt. #30 at p. 3).[1] In their Reply, Defendants maintain that the statute does not impose a duty of care separate and apart from the ordinary standard of care (Dkt. #31 at pp. 1–2). Further, they contend that Plaintiff's arguments derive from the wrong statutory text (Dkt. #31 at pp. 1–2). The Defendants are correct.

The Court begins with the text of the regulation at issue. Then, in answering the question of whether Plaintiff's negligence per se claim is proper, the Court "looks first to the final decisions of the Texas Supreme Court." *Austin v. Kroger Texas L.P.*, 746 F.3d 191, 196 (5th Cir. 2014). In the absence of a clear pronouncement from the Texas Supreme Court that resolves the matter, the

---

[1] The Court notes that Plaintiff seeks leave to amend any defect the Court detects in her Second Amended Complaint (Dkt. #30 at p. 5). As the Court has addressed, these issues are largely ones of pure law. There appear to be no facts that Plaintiff could plead to cure the matters of which Defendants complain. In any event, the Court will not permit Plaintiff to amend her complaint for a third time this close to trial.

Court turns to decisions of Texas's intermediate appellate courts for guidance. *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004). Of course, the Court is not alone in determining the contours of Texas law. If the Fifth Circuit has decided the question, the Court will apply the Fifth Circuit's precedent in arriving at its conclusion.[2]

Plaintiff's negligence per se action relies upon 49 C.F.R. § 392.14 (the "Regulation"). That Federal Motor Carrier Safety Regulation ("FMCSR"), which concerns the operation of commercial motor vehicles, states:

> [e]xtreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.

49 C.F.R. § 392.14.[3] Defendants do not appear to dispute that § 392.14 generally applies to this case. Given that Plaintiff has alleged a violation of § 392.14 as the basis for her negligence per se claim, the question is whether *this* regulation entitles Plaintiff to assert such a claim. It does not.

---

[2] While the Fifth Circuit has decided cases that involve various FMCSRs, the Fifth Circuit has yet to decide whether, under Texas law, § 392.14 may form the basis of a negligence per se claim. *See, e.g.*, *Simpson v. Empire Truck Lines, Inc.*, 571 F.3d 475 (5th Cir. 2009) (considering worker's compensation claim involving FMCSRs); *Hanan v. Crete Carrier Corp.*, No. 21-10831, 2022 WL 2188527, at *1 (5th Cir. June 17, 2022) (among many point of error, considering negligence case where a party was permitted to refer to applicable statutes such as FMCSRs at trial); *Puga v. RCX Sols., Inc.*, 922 F.3d 285 (5th Cir. 2019) (reviewing jury instructions involving a different FMCSR). Thus, the Court must rely on decisions of the Texas Supreme Court and Texas's intermediate appellate courts, as well as federal district courts that have addressed the question under Texas law.

[3] The parties appear to dispute the precise language of § 392.14. Plaintiff's Response states that the Court should note that Defendants' Motion "strategically leaves out the word 'shall' when quoting" § 392.14. (Dkt. #30 at p. 3). Plaintiff goes on to purport to quote the full language of § 392.14 (*See* Dkt. #30 at p. 3).

Under Texas law, "[t]he unexcused violation of a statute setting an applicable standard of care constitutes negligence as a matter of law if the statute is designed to prevent an injury to that class of persons to which the injured party belongs." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987), *superseded by statute on other grounds*, *F.F.P. Operating Partners, L.P. v. Duenez*, 327 S.W.3d 680 (Tex. 2007); *Missouri Pac. R. Co. v. Am. Statesman*, 552 S.W.2d 99, 102 (Tex. 1997). This is known as "negligence per se." *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979) ("Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person."). In such instances, the statutory (or regulatory) duty of care "supplants" the duty affixed by common law (the reasonable person standard). *Babiy v. Kelley*, No. 05-17-01122-CV, 2019 WL 1198392, at *3 (Tex. App.—Dallas,  Mar. 14, 2019, no pet.) (citing *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 455 (Tex. App.—Texarkana 2002, pet. denied) ("A statute that creates an absolute duty may be appropriate for negligence per se because the statutory duty supplants the common law duty of ordinary care.")); *see also Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997); *Ridgecrest Ret. v. Urban*, 135 S.W.3d 757, 762 (Tex. 2004).

---

According to Plaintiff, § 392.14 states: "Extreme caution shall be exercised when hazardous weather conditions adversely affect visibility or traction as it relates to a motor vehicle. Drivers are required to reduce speed under such conditions. If conditions become sufficiently dangerous, operations shall immediately be discontinued until the vehicle can again be safely operated. In a case where the danger to the driver, occupants, or other users on the road would increase by stopping, the driver may continue operating the vehicle until the nearest place the danger can be eliminated" (Dkt. #30 at p. 3) (emphasis omitted).

In their Reply, Defendants state that they are "uncertain where Plaintiffs obtained the 'full language' of the regulation . . . but it is not the language of the active regulation" (Dkt. #31 at p. 1). Further, Defendants assert that Plaintiff "miscites a portion of this regulation that relates to commercial vehicles carrying passengers, which is inapplicable to the facts of this case" (Dkt. #31 at p. 1).

The Court is equally unsure as to where Plaintiff obtained the language she references in her Response, as Plaintiff did not cite to anything in the quoted passage. No less, the Court uses the current language of § 392.14 to perform its analysis here. Plaintiff's claim does not purport to rest on the portion of the Regulation which contemplates a commercial vehicle carrying passengers. So, the Court does not rely upon that issue in coming to its determination.

Generally, a negligence per se action may be predicated upon a regulation rather than a statute. *See Suzlon Wind Energy Corp. v. Shippers Stevedoring*, 662 F. Supp. 2d 623, 652 (S.D. Tex. 2009) (citing *Freudiger v. Keller*, 104 S.W.3d 294, 296 (Tex. App.—Texarkana 2003, pet. denied)). "However, 'courts have tended to adopt administrative standards less frequently than those of legislative enactments.'" *Suzlon*, 662 F. Supp. 2d at 652 (quoting RESTATEMENT 2D TORTS § 286, cmt. d (1965)). Notably, the Texas Supreme Court has frequently suggested that, in order for a negligence per se action to be predicated upon a particular statute or regulation, that statute or regulation must be *penal* in nature. *See, e.g.*, *Smith*, 940 S.W.2d at 607; *El Chico*, 732 S.W.2d at 312 (citing *Nixon v. Mr. M Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985)); *Missouri Pac. R. Co.*, 552 S.W.2d at 102–03. Thus, "[a] violation of a non-penal administrative code does not establish a negligence per se claim." *Ridgecrest Ret. & Healthcare v. Urban*, 135 S.W.3d 757, 762 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509–10 (Tex. App.—Fort Woth 2001, pet. denied). "A 'penal statute is one that defines a criminal offense and specifies a corresponding fine, penalty or punishment.'" *Del Castillo v. PMI Holdings N. Am., Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *6 (S.D. Tex. Jul. 13, 2016) (quoting *Pack*, 53 S.W.3d at 509–10); *but see Freudiger*, 104 S.W.3d at 296–97 ("[A] violation of an administrative regulation may also give rise to a negligence per se claim if the regulation has been adopted by the court as defining the standard of care of a reasonable person.") (citations omitted).

Assuming the statute or regulation is "penal," a plaintiff faces another hurdle she must vault to bring a cognizable negligence per se claim. The Texas Supreme Court has stated that "[s]tautes and regulations that generally require a party to act safely or reasonably do not substitute a legislatively imposed standard of conduct for the reasonable-person standard of common-law

negligence." *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 163 (Tex. 2021) (citing *Entex, a Div. of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1, 8–9 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (concluding statute requiring gas utility to furnish facilities that are "safe, adequate, efficient, and reasonable" did not impose different duty); *Ordonez v. M.W. McCurdy & Co.*, 984 S.W.2d 264, 271 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that common-law negligence standard is read into statute imposing duty to act "safely")).

Thus, "[w]hen a statute includes an ordinary-prudent-person standard, the negligence per se doctrine cannot apply to the case because the statute implicates the same standard of conduct as the common-law standard of ordinary care." *Hanson v. Werner Enters., Inc.*, No. 2:21-CV-00245-RSP, 2022 WL 17823981, at *6 (E.D. Tex. Dec. 20, 2022) (citing *Supreme Beef Packers*, 67 S.W.3d at 456; *Rivera v. Thanh Chi Nguyen*, No. PE:18-CV-41-DC-DF, 2019 WL 4999055, at *4 (W.D. Tex. July 22, 2019), *report and recommendation adopted*, 2019 WL 5026928 (W.D. Tex. Aug. 6, 2019)); *Freudiger*, 104 S.W.3d at 297 (quoting *Supreme Beef Packers*, 67 S.W.3d at 456) ("Where a statute incorporates the ordinarily prudent person standard, negligence per se does not apply because the statute does not establish a specific standard of conduct different from the common-law standard of ordinary care. In those cases, 'it is redundant to submit a question on the statutory standard or to instruct the jury regarding it, and the negligence per se standard is subsumed under the broad form negligence question.'"). "To decide whether a penal statute incorporates the reasonably prudent person standard, courts ask whether the statute 'imposes a conditional duty' rather than 'an absolute duty.'" *Ellis v. Klawonn*, No. 4:21-CV-00977-SDJ-CAN, 2023 WL 3993043, at *4 (E.D. Tex. June 8, 2023) (quoting *Ordonez v. Ausby*, No. EP-21-CV-00077-DCG, 2023 WL 310442, at *6 (W.D. Tex. Jan. 18, 2023) (citing *Miranda-Lara v. Rebert*, No. 09-18-00325-

CV, 2020 WL 5099968, at *4–5 (Tex. App.—Beaumont Aug. 31, 2020, no pet.))); *see also M.W. McCurdy & Co.*, 984 S.W.2d at 269. Critically, "[i]n the specific context of a statute the regulates drivers' conduct, courts ask whether the statute 'leaves any room for the driver to make a discretionary call.'" *Ellis*, 2023 WL 3993043, at *4 (quoting *Ausby*, 2023 WL 310442, at *6).

These central tenants in mind, the Court turns to the question at hand: whether 49 C.F.R. § 392.14 may form the basis for a negligence per se action. It cannot. First, it seems that § 392.14 passes step one. That is, § 392.14 is penal in nature. *See Smith*, 940 S.W.2d 602; *El Chico*, 732 S.W.2d at 312; *Ridgecrest Ret. & Healthcare*, 135 S.W.3d at 762; *Pack*, 53 S.W.3d at 509–10. The parties before the Court did not raise this issue. No less, the Court notes that Texas has adopted § 392.14. *See* 37 TEX. ADMIN. CODE § 4.11(a); *Garrett v. State*, 424 S.W.3d 624, 630 (Tex. App. Houston [1st Dist.], 2013, pet ref'd); *see also Freudiger*, 104 S.W.3d at 297. And intermediate Texas appellate decisions confirm, as the Texas Penal Code reflects, that a violation of the Federal Motor Carrier Safety Regulations is a class C misdemeanor, punishable by a fine of up to $500. *Garrett*, 424 S.W.3d at 627. Further, Texas intermediate appellate decisions seem to tacitly assume that § 392.14 is penal. *See, e.g.*, *Freudiger*, 104 S.W.3d at 297. Thus, it seems that the regulations that Texas has adopted—or at least § 392.14—are penal for purposes of a negligence per se claim. For present purposes, in the absence of contrary decisions, the Court assumes that the Regulation is penal for purposes of this case.

But that alone does not resolve the question. Indeed, because § 392.14 does not impose a specialized duty of care, it cannot form the basis of a negligence per se action under Texas law. The Texas Supreme Court has not addressed the precise issue of whether § 392.14 may form the predicate to a negligence per se claim. It has, however, noted ("without commenting on the[] legal

merits") that some "Texas state courts have dealt with these federal regulations in the context of state-law tort actions." *JNM Express, LLC v. Lozano*, 688 S.W.3d 327, 331 n.9 (Tex. 2024) (citing *Pilgrim's Pride Corp. v. Burnett*, No. 12-10-00037-CV, 2012 WL 381714, at *9 (Tex. App.—Tyler Feb. 3, 2012, no pet.) ("Several Texas cases have held that a violation of an administrative regulation such as the FMCSRs, in the appropriate cases, serves as a basis for a negligence finding."); *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 839 (Tex. App.—Fort Worth 2006, no pet.) ("Several Texas cases consider sections of the FMCSR in the negligence per se context . . . .")). But the Texas Supreme Court, as recently as last year, declined to opine on the issue, stating that its analysis in *JNM* did "not reach so far." *Id.* Thus, the Court turns to intermediate decisions from Texas courts of appeals for guidance.

In so doing, it becomes clear that, under Texas law, an action for negligence per se based on § 392.14 cannot lay. As a threshold matter, neither *Pilgrim's Pride* nor *Omega*—both of which involved FMCSRs—assessed § 392.14 specifically. *See Pilgrim's Pride*, 2012 WL 381714, at *9 (analyzing 49 C.F.R. §§ 392.33(a), 393.11, 393.22, and 393.26 in a negligence action); *Omega*, 191 S.W.3d at 839 (analyzing 49 C.F.R. §§ 393.205, 396.3, and 396.13 in a negligence per se action). The vast majority of other Texas cases similarly do not consider § 392.14. *See, e.g.*, *Omega*, 191 S.W.3d at 839–40 (citing *Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 386 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (finding no error in trial court's failure to instruct jury on negligence per se when there was no evidence that failure of disabled truck's driver to set out roadside warning triangles as required by FMCSR was proximate cause of collision as related to 49 C.F.R. § 392.22(b)(2)(v)); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 124 (Tex. App.—Beaumont 2001, pet. denied) (affirming negligence per se instruction regarding 49 C.F.R. §§ 383.23, 395.8,

390.11, 383.3, which prohibited employer from knowingly allowing a person to operate a commercial vehicle without a commercial license)).

Two cases, however, are on point. Both cases hold unequivocally that § 392.14 cannot give rise to a negligence per se claim because the regulation incorporates the ordinary standard of care. The first case is *Schultz v. Lester*. No. 05-09-01549-CV, 2011 WL 3211271, at *6 (Tex. App.—Dallas, July 29, 2011, no pet.). There, plaintiff-appellants appealed from a take nothing judgment involving an automobile collision with a commercial tractor-trailer. *Id.* at *1. As relevant here, on appeal, plaintiff-appellants argued that the trial court erred in refusing to charge the jury on § 392.14. *Id.* at *7. The trial court did not instruct the jury regarding negligence per se, but instead only provided "the broad form negligence question.'" *Id.* at *8. In affirming the refusal to submit negligence per se based on § 392.14 to the jury, the Dallas Court of Appeals stated, "[w]hen, as here, a statute incorporates the ordinarily prudent person standard, 'it is redundant to submit a question on the statutory standard or to instruct the jury regarding it, and the negligence per se standard is subsumed under the broad-form negligence question." *Id.* Thus, the court affirmed the trial court's decision that § 392.14 cannot give rise to a negligence per se claim. *See id.*

The second case—*Freudiger v. Keller*—out of the Texarkana Court of Appeals bolsters that holding. *See* 104 S.W.3d at 295. That case also involved an automobile collision with a commercial delivery truck. *Id.* There, the plaintiff-appellants requested that the trial court instruct the jury on a theory of negligence per se based on § 392.14. *Id.* at 295–96. The requested instruction, in keeping with the language of § 329.14, stated that the driver of the commercial vehicle owed a duty of "extreme caution." *Id.* at 295. The trial court declined to issue such an instruction. *Id.* at 296. The Texarkana Court of Appeals affirmed. *Id.* at 297. In so doing, the court analyzed § 392.14 and held

that it did not create a "special standard of care" such that it could anchor a negligence per se claim. *Id.* Further, the court noted that "[t]he genesis of a negligence per se cause of action must come from a court's finding in a civil case that a statutory or regulatory enactment creates a special standard of care." *Id.* at 298 (citing *Merritt*, 940 S.W.2d at 455–56). The court concluded that it had "neither a legislative enactment nor a finding by a court in a civil case that [§ 392.14] creates a special standard of care." *Id.* Accordingly, *Freudiger* and *Schultz* converge on their central teaching: in Texas, a negligence per se claim based on § 392.14 cannot lay. Plaintiff has not provided the Court with a legislative enactment nor a finding by a court in a civil case to the contrary.

The Court agrees with the reasoning and holding of *Schultz* and *Freudiger*. Sitting in diversity, the Court will apply their holdings to the instant matter. Here, Plaintiff does not engage with *Schultz* and *Freudiger* and has provided the Court with no reason to deviate from their reasoning.[4] As was the case in *Freudiger*, Plaintiff has not provided any authority for the proposition that § 392.14 creates a special standard of care. *Compare id.* at 297–98 *with* (Dkt. #30 at pp. 3–4). Further, Plaintiff does not grapple with the authority cited in Defendants' Motion, the most critical of which is *Freudiger*. *Compare* (Dkt. #30 at pp. 3–4) *with* (Dkt. #24 at p. 4) (citing *Freudiger*, 104 S.W.3d at 296). Instead, Plaintiff points to the word "shall" in § 392.14 in an apparent effort to

---

[4] Neither party's briefing on this matter cited *Yap v. ANR Freight Sys., Inc.*, 789 S.W.2d 424 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Though the Court does not have a crystal ball that permits it to speculate as to what the parties might have said had they briefed that case, in the interest of a fulsome analysis, the Court will address its applicability here.

There, the court appeared to tacitly approve of a negligence per se instruction based on § 392.14. *See id.* at 427, 427 n.3 ("Plaintiff Yap is required to prove proximate cause even in a negligence per se situation (which Yap argues was established by the finding of negligence on [the defendant driver's part]) . . . because the federal regulations about which the jury was instructed merely establish a standard of care required by law") (cleaned up). But the propriety of that claim was not the issue on appeal—the sufficiency of evidence was. *Id.* at 427–28. Accordingly, that *dicta* does not bind the Court here, and that case did nothing to analyze whether submission of a negligence per se claim based on § 392.14 was proper. Accordingly, *Yap* does not change this Court's analysis or holding.

paint the Regulation's "extreme caution" language as a mandate establishing a specialized standard of care (*See* Dkt. #30 at p. 3). In support, Plaintiff invokes Texas Supreme Court precedent for the proposition that "where the Legislature has declared that a particular act shall not be done, it fixes a standard of reasonable care, and an unexcused violation of the statute constitutes negligence or contributory negligence as a matter of law" (Dkt. #30 at p. 3) (citing *Missouri Pac. R. Co.*, 552 S.W.2d at 102–03).

That argument is misguided. Not only does it ignore the on-point cases previously discussed, but it conflates the binary question of, say, whether a defendant in a personal injury suit stopped at a stop sign, with a regulation like § 392.14, which necessarily requires a driver to exercise discretion in order to follow. In *Freudiger*, the Texarkana Court of Appeals explored this difference and listed a plethora of statutes that could give rise to negligence per se. All of them are binary in nature. *See Freudiger*, 104 S.W.3d at 296–97. To demonstrate, the court stated that:

> [Texas] civil courts have held that a tortfeasor who drives on the wrong side of the road may be negligent per se because the Legislature passed a law requiring all motorists in Texas to drive on the right side of the road. A motorist who fails to stop at a stop sign may be negligent per se. And a motorist in Texas who fails to stop at a railroad crossing when a train is approaching may be found negligent per se.

*Id.* (internal citations omitted). To be sure, some FMCSRs impose a binary, special standard of care, for which the failure to comply can support a negligence per se action. *See Pilgrim's Pride*, 2012 WL 381714, at *9 (citing *Omega*, 191 S.W.3d at 839). But not this Regulation.

Again, "[i]n the specific context of a statute that regulates drivers' conduct, courts ask whether the statute 'leaves any room for the driver to make a discretionary call.'" *Ellis*, 2023 WL 3993043, at *4 (quoting *Ausby*, 2023 WL 310442, at *6). As Defendants point out, compliance with § 392.14 *requires* a driver to exercise discretion (*See* Dkt. #31 at p. 2). For example, the regulation

requires the use of "extreme caution" when "hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction." 49 C.F.R. § 392.14. How much of one of these variables adversely affects visibility or traction to mandate the use of extreme caution? The Regulation requires a driver to cease operating the vehicle if conditions become "sufficiently dangerous." What does that mean? The answer is in the eye of the driver— not the Legislature. More importantly, that is a jury question that will inevitably be subsumed by an ordinary negligence claim and instruction. *Freudiger*, 104 S.W.3d at 297. Plaintiff's arguments, therefore, fall flat.

Finally, though neither party raised the issue in their briefs, the Court notes that the Texas Supreme Court has articulated five factors that courts consider when determining whether a particular regulation would be a proper basis for a negligence per se action in *Perry v. S.N.* 973 S.W.2d 301, 309 (Tex. 1998). Those factors are as follows:

1. whether the regulations are the sole source of any tort duty from the defendant to the plaintiff or merely supply a standard of conduct for an existing common law duty;

2. whether the regulations put the public on notice by clearly defining the required conduct;

3. whether the regulations would impose liability without fault;

4. whether negligence per se would result in ruinous damages disproportionate to the seriousness of the regulatory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and

5. whether the plaintiff's injury is a direct or indirect result of the violation of the regulations.

*Omega*, 191 S.W.3d at 840 (citing *Perry*, 973 S.W.3d at 309); *see also Claybrook v. Time Definite Services Transp., LLC*, No. 4:15-CV-763-A, 2016 WL 3963025, at *3 (N.D. Tex. July 21, 2016). In an abundance of caution and for the avoidance of any doubt, the Court will address each factor in

turn. But it is Texas's province to finally decide for the ages whether particular regulations may give rise to negligence per se.

*First*, as *Freudiger* established, § 392.14 incorporates the ordinary person standard. 104 S.W.3d at 297. The logical consequence of that conclusion is that § 392.14 is not the only tort duty that extends from the defendant to the plaintiff. Instead, it "merely suppl[ies] a standard of conduct for an existing common law duty." *See Omega*, 191 S.W.3d at 840. *Second*, as discussed, the Regulation does not clearly define the required conduct because it involves the exercise of discretion. *See id. Third*, the Regulation does not appear to impose strict liability. *See* § 392.14. *Fourth*, there is nothing to suggest that ruinous damages would ensue if the Regulation did give rise to a negligence per se action. *Fifth* and finally, whether the plaintiff's injury here is a direct or indirect result of a violation of the Regulation has yet to be determined, as that is a matter for a jury to decide. Thus, the factors do not compel a conclusion contrary to those drawn by the intermediate Texas appellate decisions such as *Freudiger*. In short, because § 392.14 does not create a specialized standard of care, Plaintiff's negligence per se cause of action cannot lay. *See id.* at 297–98. Accordingly, Plaintiff's negligence per se claim should be dismissed as legally barred.

## II.    Direct Negligence Claims for Negligent Training and Supervision

In their second point, Defendants assert that "Plaintiff's claims against XPO via respondeat superior and her direct claims against XPO for negligent training and supervision are mutually exclusive modes of recovery" (Dkt. #25 at p. 5). Thus, according to Defendants, Plaintiff's negligent supervision and training claims should be dismissed as barred under the law (Dkt. #25 at p. 5). In support, Defendants rely on a number of cases to argue that if a plaintiff does not bring a cause of action for gross negligence, and the employer concedes that they might be vicariously liable, "negligence claims based on the employer's relationship with the employee . . .

17

and direct negligence claims are mutually exclusive" (Dkt. #25 at p. 5). Here, because Plaintiff elected not to pursue a gross negligence claim, and because XPO has admitted that the collision at issue occurred within the course and scope of Hawk's employment with XPO (giving rise to vicarious liability), Plaintiff's negligence claims should be dismissed as redundant and duplicative of her respondeat superior claim, so the argument goes (Dkt. #25 at p. 6).

In contrast, Plaintiff argues that the basis for her direct negligence causes of action against XPO is XPO's "sole decision to operate its fleet of trucks in icy conditions creating a danger for other drivers on the road" (Dkt. #30 at p. 4). Thus, the caselaw upon which Defendants rely, according to Plaintiff, is inapplicable because those cases only contemplate negligence actions by *drivers* (Dkt. #30 at p. 4). According to Plaintiff, because the accident in question contemplates two "separate and independent causes of injury," the claims should not be dismissed as mutually exclusive (Dkt. #30 at p. 4).

In their Reply, Defendants contend that Plaintiff's Response "improperly relies on factual allegations that are not found in her live complaint" (Dkt. #31 at p. 2). Further, Defendants assert that, notwithstanding that critical omission, Plaintiff's claims of negligent training and supervision fail because "XPO has stipulated that it is liable for Hawk's negligent conduct" (Dkt. #31 at p. 2). As set forth below, while Defendants arguments have merit, at this stage, they miss the mark. Plaintiff's direct negligence claims against XPO should not be dismissed because they are not necessarily mutually exclusive with her vicarious liability claim at this juncture.

In Texas, a negligence claim requires a plaintiff to prove that the defendant owed a legal duty to the plaintiff and the defendant's breach of that duty proximately caused the plaintiff's damages. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). The doctrine of

18

respondeat superior permits a plaintiff to hold an employer vicariously liable for the negligence of its employee if that employee was acting within the course and scope of his employment. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007); *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 565 (Tex. 2016). "Direct claims of negligence such as negligent hiring, supervision, training, and retention are based on the employer's own negligent conduct in creating an unreasonable risk of harm to others." *Frazier v. U.S. Xpress, Inc.*, No. 6:19-CV-00557-ADA-JCM, 2020 WL 4353175, at *3 (W.D. Tex. July 29, 2020) (citing *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.)).

If a defendant company stipulates to its vicarious liability for its employee's alleged negligence, "[a]s a general rule, in matters involving ordinary negligence, claims for vicarious liability and claims for direct negligence 'are mutually exclusive modes of recovery.'" *Frazier*, 2020 WL 4353175, at *3 (quoting *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App.—Dallas 2002, pet. denied)); *see also Arif v. XPO Logistics, Express, LLC,* No. CV 24-4522, 2025 WL 307211, at *2 (S.D. Tex. Jan. 13, 2025) ("It is well established under Texas law that in a claim for ordinary negligence, if a defendant company stipulates to its vicarious liability for its employee's negligence, a company's liability under respondeat superior and direct negligence are mutually exclusive.") (internal citation omitted). "If the plaintiff does not allege gross negligence and the employer admits vicarious liability, the direct negligence claims are irrelevant." *Frazier*, 2020 WL 4353175, at *3. Thus, "[w]here only ordinary negligence is alleged . . . negligent hiring or negligent entrustment and respondeat superior are mutually exclusive modes of recovery." *Rosell*, 89 S.W.3d at 654 (citing *Arrington*, 578 S.W.2d at 178).

Courts sometimes refer to this mutual exclusivity upon an employer's stipulation as the "Admissions Rule." *See, e.g.*, *De Leon v. Trahan*, No. P:21-CV-00086-DC, 2024 WL 2243302, at *2 (W.D. Tex. Apr. 1, 2024); *Werner Enters. v. Blake*, 672 S.W.3d 554, 587 (Tex. App.—Houston [14th Dist.] 2023) *review granted* (Aug. 30, 2024).[5] Pursuant to the Admissions Rule, "if a company stipulates to its vicarious liability for its employee's negligence, the plaintiff is barred from also recovering under a direct negligence theory against the company" unless the Plaintiff asserts a gross negligence claim against the employer. *De Leon*, 2024 WL 2243302, at *2 (citing *Rosell*, 89 S.W.3d at 654). "In other words, a plaintiff cannot double dip and can only recover through vicarious liability." *Id.* (cleaned up). That makes sense. Indeed, in cases involving negligent training, hiring, or supervising, for example, "[i]f vicarious liability is not contested, the employee's competence and the employer's own negligence in hiring, failing to properly train, or negligently supervision become irrelevant, as long as a plaintiff pleads ordinary negligence. *Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009).

Sister courts have recognized that the Texas Supreme Court has not adopted the Admissions Rule. *See De Leon*, 2024 WL 2243302, at *2. But the Texas legislature has endorsed it. Indeed, § 72.054 of the Texas Civil Practice and Remedies Code states, in relevant part, that:

> [I]n a civil action under this subchapter, an employer defendant's liability for damages caused by the ordinary negligence of a person operating the defendant's commercial motor vehicle shall be based only on respondeat superior if the defendant stipulates, within the time provided by Section 72.052 for filing a motion to bifurcate, that, at the time of the collision, the person operating the vehicle was . . . (1) the defendant's employee; and (2) acting within the scope of employment.

---

[5] The Court notes that the Court of Appeals for the Fourteenth District declined to adopt the admissions rule, reasoning in part that it had not been recognized in that District. *Werner*, 672 S.W.3d at 586. But there, Plaintiffs had brought a gross-negligence cause of action. *Id.* at 588. Here, Plaintiff has not brought a gross negligence claim. Thus, *Werner*'s rejection of the rule does not change the Court's ultimate conclusion in this case.

TEX. CIV. PRAC. & REM. CODE § 72.054. Neither party drew the Court's attention to this statute, nor seems to dispute the Rule's existence. Thus, the Court does not decide this issue with the benefit of full briefing. No less, "'the wider spread position among Texas appellate and federal district courts'" is to apply the Rule. *De Leon*, 2024 WL 2243302, at *3 (quoting *Cristo v. C.R. England, Inc.*, No. 5:18-CV-1344-DAE, 2021 WL 801340, at *5 (W.D. Tex. Jan. 7, 2021)). Indeed, under the Admissions Rule, "Texas courts have routinely found that direct negligence claims and respondeat superior are mutually exclusive modes of recovery." *Renteria v. Class Glob. Logistics, LLC*, No. 3:23-CV-2073-X, 2024 WL 3297518, at *2 (N.D. Tex. July 3, 2024) (citing *Graham v. Lewis*, No. 3:21-CV-1274-D, 2023 WL 138923, at*2 (N. D. Tex. Jan. 9, 2023)).

Though the Admissions Rule might appear to be sweeping, it still has limits. Though caselaw has not defined the full contours of the Rule, this much is clear: "[t]his [rule] does not preclude 'an ordinary negligence claim against an employer . . . that does not require a finding of negligence by an employee as a prerequisite to an employer defendant being found negligent.'" *Renteria*, 2024 WL 3297518, at *2 (quoting TEX. CIV. PRAC. & REM. CODE § 72.054(a)). It is well established that, under the Admissions Rule, direct negligence claims against a driver's employer such as negligent failure to supervise and negligent failure to train are barred as mutually exclusive with a respondeat superior claim. *See, e.g.*, *De Leon*, 2024 WL 2243302, at *2; *Renteria*, 2024 WL 3297518, at *2; *Ausby*, 2023 WL 310442, at *2–3; *Sanchez v. Transportes Internacionales Tamaulipecos S.A. DE C.V.*, No. 7:17-CV-354, 2017 WL 3671089, at *2 (S.D. Tex. Jul. 20, 2017); *Cornejo v. EMJB, Inc.*, No. SA-19-CV-01265-ESC, at *8 (W.D. Tex. 2021); *Rosell*, 89 S.W.3d at 654; *Arrington's Estate*, 578 S.W.2d at 178. But if a plaintiff alleges that the employer "separately contributed to the cause of the incident" such that the direct negligence claim is independent of

the employee's alleged negligence, Texas law seems to permit the maintenance of that independent claim. *See Renteria*, 2024 WL 3297518, at *2; *Ausby*, 2023 WL 310442, at *3 n.12.

Thus, the question before the Court becomes whether Plaintiff's direct negligence claims against XPO—which she packages as negligent supervision and negligent training claims—are barred as derivative, and therefore duplicative, of Hawk's negligence, or instead are permitted claims that do not turn on Hawk's negligence at all. Plaintiff's Response asserts that her direct negligence claims against XPO are separate and apart from Hawk's negligence. Specifically, Plaintiff avers that her direct negligence claims are based on XPO's "sole decision" to dispatch its trucks in hazardous weather conditions (Dkt. #30 at p. 4). And that, Plaintiff argues, is a separate *cause* for the injuries Y.L. allegedly received because of the collision (Dkt. #30 at p. 4). While the caselaw Plaintiff cites in support of her position does not appear to be specific to the discrete issue at hand, her point stands.[6] *See Renteria*, 2024 WL 3297518, at *2; *Ausby*, 2023 WL 310442, at *3

---

[6] Plaintiff cites four cases for the proposition that "[o]n numerous occasions, Texas Courts have recognized claims to proceed when two separate and independent causes of action exist" (Dkt. #30). While each case Plaintiff cites generally notes fundamental principles of concurrent causation as applied to insurance companies, none of them address this specific issue at hand. *See Guar. Nat. Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) ("In Texas, an insurer is not liable only when a covered peril and an excluded peril concurrently cause a loss. Where a loss, however, is caused by a covered peril and an excluded peril that are intendent causes of the loss, the insurer is liable.") (internal citation omitted); *Warrilow v. Norrell*, 791 S.W.2d 515, 526 (Tex. App.—Corpus Christi-Edinburg 1989, write denied) ( "That multiple acts concurred in the infliction of injury does not nullify any single contributory act.") (internal citation omitted); *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 921 (Minn. 1983) ("[W]here two acts concurred to cause the damage, and one of the acts was covered under the insuring agreement of each policy, [the Supreme Court of Minnesota] allowed recovery against both [insurance] policies."); *Travelers Indem. Co. v. Citgo Petrol. Corp.*, 166 F.3d 761, 771 (5th Cir. 1999) ("We recognize that Texas courts will allow claims against an insured to proceed when two separate and independent "but for" causes of injury sued on—one excluded under the policy and one not—are involved.").

n.12, 4. The caselaw that is specific to the issue does carve out an exception for such allegations. *See Renteria*, 2024 WL 3297518, at *2; *Ausby*, 2023 WL 310442, at *3 n.12, 4.

Defendants counter that Plaintiff's direct negligence actions still hinge on Hawk's negligence and that Plaintiff's framing of the direct negligence claims are derivative of facts not contained in her Complaint (Dkt. #31 at p. 2). But the Court is not persuaded by Defendants' arguments. True enough, Plaintiff (arguably erroneously) packages her direct negligence claims as negligent supervision and negligent failure to train Hawk (Dkt. #23 at pp. 5–6). Certainly, those claims, if they are true negligent supervision and training claims, would be barred because XPO stipulated to vicarious liability and Plaintiff did not assert a gross negligence cause of action. *See, e.g.*, *Ausby*, 2023 WL 310442, at *3; *Renteria*, 2024 WL 3297518, at *2; *Rosell*, 89 S.W.3d at 654; *Arrington's Estate*, 578 S.W.2d at 178. But the Court does not construe Plaintiff's claim as alleging negligent training and supervision claims derivative of Hawk's negligence. Instead, the Court reads her claim as one asserting that XPO was negligent because Hawk's vehicle should not have been on the road in the first place. Facially, plaintiff's factual allegations do support that claim. And Plaintiff's Response clarifies that *this* allegation is what she intends to pursue (*See* Dkt. #30 at p. 4). That claim does not require a finding that Hawk was negligent.

Accordingly, to the extent Plaintiff seeks to "double dip," and recover on direct negligence theories of negligent supervision or negligent training *and* vicarious liability, the Court will not permit Plaintiff to do so. But to the extent Plaintiff seeks to argue separate theories of negligence in so far as each represents a separate cause of Y.L.'s injuries, Texas's Admissions Rule does not bar her from pursuing those theories. *See Renteria*, 2024 WL 3297518, at *2; *Ausby*, 2023 WL 310442, at *3 n.12, 4. Indeed, there is a world in which a jury could determine that Hawk was not

negligent, but that XPO was negligent in fielding its trucks in a wintery mix of weather conditions. In that world, Plaintiff could recover from XPO alone. Though perhaps unlikely, it is *possible*. Thus, the Court need not dismiss her claim at this time.

Notably, all of the cases that dismiss direct negligence actions as duplicative of vicarious liability claims under the Admissions Rule do so at the summary judgment stage—not the 12(b)(6) stage. *See, e.g.*, *Ausby*, 2023 WL 310442, at *5; *Renteria*, 2024 WL 3297518, at *2; *De Leon*, 2024 WL 2243302, at *2–3. Thus, the Court is hesitant to cut Plaintiff's claims off at the knees at the pleading stage. No less, the Court will hold Plaintiff to the words in her Response. Texas law will not permit her to pursue negligent supervision and training claims *and* a respondeat superior claim. "[T]hey are mutually exclusive modes of recovery." *Ausby*, 2023 WL 210442, at *2. And "courts are consistent in this regard: although a plaintiff may have pleaded respondeat superior and direct negligence as alternative theories of liability, the case cannot go to the jury on both theories under the circumstances described above." *Id.* at *4. Thus, at trial, the Court will not allow Plaintiff to argue the claims as negligent supervision or hiring claims if these are what her direct negligence claim against XPO truly turns out to be. But as Plaintiff represents her claims now, they may peacefully coexist. The Court can craft a jury instruction that ensures, as required under Texas law, that Plaintiff's damages (if any) are not a product of "double dipping" into XPO's pockets in violation of the Admissions Rule. *See De Leon*, 2024 WL 2243302.

## CONCLUSION

It is therefore **ORDERED** that Defendants Ronald Lee Hawk and XPO Logistics Freight Inc.'s Rule 12(b)(6) Partial Motion to Dismiss (Dkt. #25) is hereby **GRANTED in part and DENIED in part.** Specifically, the Court concludes as follows:

24

1. Plaintiff's negligence per se claim is **DISMISSED with prejudice.**

2. To the extent Plaintiff's direct negligence claims against XPO assert pure negligent supervision and negligent training theories, they are **DISMISSED with prejudice.**

3. To the extent Plaintiff's direct negligence claims against XPO assert a separate cause of action for a cause of Plaintiff's damages independent of Hawk, Defendants' Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 11th day of February, 2025.**

*Amos Mazzant*

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE